

FILED

Sep 26 2019, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Siobhan M. Murphy
Lewis Brisbois Bisgaard & Smith LLP
Indianapolis, Indiana

Scott B. Cockrum
Lewis Brisbois Bisgaard & Smith LLP
Schereville, Indiana

ATTORNEYS FOR APPELLEE
DARNELL WRIGHT

David A. Singleton
Chad E. Romey
Blackburn & Green
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Prime Insurance Co., <br> *Appellant,* <br><br> v. <br><br> Darnell Wright, et al., <br> *Appellees.* | September 26, 2019 <br><br> Court of Appeals Case No. 19A-CT-353 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Craig J. Bobay, Judge <br><br> Trial Court Cause No. 02D02-1503-CT-121 |

**Bradford, Judge.**

# Case Summary

The issue before us is whether an insurance company, which has been relieved of all responsibility under its liability policy through judicial declaration, has an adequate interest in the underlying liability-related lawsuit to warrant participation in said lawsuit for the purpose of attempting to limit its potential future liability stemming from the same events under an MCS-90 Endorsement. Because the insurance company's remaining interest in the lawsuit is contingent, rather than cognizable, we conclude that it does not.

# Facts and Procedural History[1]

On November 12, 2013, Darnell Wright was injured in a collision with a vehicle driven by Decardo Humphrey. At the time of the collision, Humphrey was acting as an agent for/in the scope of his employment with Ali Faruq, Riteway Trucking, Inc. ("Riteway"), Riteway Transportation, Inc. ("RTI"), and Prudential Trucking, Inc. ("PTI"). On March 27, 2015, Wright filed suit against Humphrey, Faruq, Riteway, RTI, and PTI (collectively, "Defendants"). For whatever reason, Riteway would not cooperate with its insurance provider, Prime Insurance Co. ("Prime"), and failed to appear or present any defense in a subsequent lawsuit brought against it by Wright.

---

[1] We held oral argument in this case on September 12, 2019, in our courtroom in Indianapolis. We commend counsel for the high quality of their arguments.

[3] On or about May 1, 2015, Prime filed an action in the Northern District of Indiana seeking a declaration that it had no duty to defend Riteway or any other defendant in Wright's state-court action. Meanwhile, back in the trial court, on June 17, 2015, Wright filed a motion for a default judgment. In July of 2015, Prime sought and was granted permission to intervene in Wright's state-court action.

[4] The trial court conducted a hearing on Wright's motion for a default judgment on August 19, 2015. Defendants and Prime failed to appear, despite each having notice of the hearing.[2] The next day, on August 20, 2015, the trial court entered default judgment against Faruq, Riteway, RTI, and PTI, finding that they were in default. The trial court did not enter default judgment against Prime. The trial court entered judgment in favor of Wright for $400,000.

[5] Prime filed an answer and affirmative defenses on August 21, 2015, and a motion to obtain discovery from Wright on November 4, 2015. Wright objected to Prime's discovery requests on the grounds that judgment had already been entered against Riteway on liability and damages. In response to Wright's objection, on January 4, 2016, Prime filed motions to set aside the default judgment and to obtain discovery. The trial court denied Prime's

---

[2] While the parties presented argument relating to Prime's absence from the default judgment hearing, we find Prime's absence to be irrelevant to the question of whether Prime has an adequate interest in the underlying lawsuit to warrant setting aside the default judgment entered against Riteway. The non-appearance of Prime's attorney at the default judgment hearing is therefore a non-factor.

motion to obtain discovery and stayed the case until Prime's federal action was resolved.

[6] After its attempts to obtain discovery from Wright in the state-court action were rejected, Prime requested permission to issue discovery requests to Wright regarding the issues of liability and damages in the federal-court action. The federal court denied Prime's request, noting that the information sought was irrelevant to the pending request for a declaratory judgment. The federal court stated that it would not permit Prime "to subvert limitations on discovery in another proceeding, by attempting to obtain discovery in [the federal] case that has already been denied in the underlying Allen Superior Court action." Appellee's App. Vol. II p. 76 (internal quotation omitted). On January 29, 2018, the federal court ordered that Prime did not owe a duty to defend or indemnify Riteway, that Riteway had failed to meet its obligations under its insurance policy, and that Riteway and its "alter egos" shall be liable to Prime for any payments made under an MCS-90 Endorsement[3] to the insurance policy. Appellee's App. Vol. II p. 58.

---

[3] Federal law requires that a motor carrier maintain proof of financial responsibility. *See* 49 C.F.R. § 387.7. The MCS-90 endorsement embodies a public financial responsibility in situations where a motor carrier is responsible for an accident causing injury to a member of the public. *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 883 (10th Cir. 2009). "The MCS-90 endorsement is in effect, suretyship by the insurance carrier to protect the public—a safety net, and not an ordinary insurance provision to protect the insured." *Travelers Indem. Co. of Ill. v. W. Am. Specialized Transp. Servs., Inc.*, 409 F.3d 256, 260 (5th Cir. 2005) (internal quotation omitted).

> The endorsement does not extinguish the debt of the insured. The MCS-90 endorsement instead grants the insurer the right to seek reimbursement from the insured party for any payment made by the company on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that [the insurance company] would not have been obligated to make under the provisions of the policy except for the

[7] Following resolution of the federal-court action, the trial court held a hearing on Prime's motion to set aside the default judgment. On October 25, 2018, the trial court issued an order denying Prime's request to set aside the default judgment against Riteway.[4]

# Discussion and Decision

[8] Prime contends that the trial court abused its discretion by denying Prime's motion to set aside the default judgment entered against Riteway. Trial Rule 55(A) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise comply with these rules and that fact is made to appear by affidavit or otherwise, the party may be defaulted by the court." "A judgment by default which has been entered may be set aside by the court for the grounds and in accordance with the provisions of [Trial] Rule 60(B)." T.R. 55(C). Trial Rule 60(B) provides, in relevant part, that a trial court may grant a request for a relief from a default judgment for "(1) mistake, surprise, or excusable neglect" or "(8) any [other] reason justifying relief from the operation of the judgment[.]"

[9] The decision whether to set aside a default judgment is given substantial deference on appeal. Our standard of review is

---

agreement contained herein…. In sum, the MCS-90 endorsement creates an obligation entirely separate from other obligations created by the policy to which it is attached. The MCS-90 defines the insurer's public financial responsibility obligation, while the underlying policy defines the insurer's insurance liability obligation.

*Yeates*, 584 F.3d at 884 (emphases omitted, internal quotations and citations omitted, brackets in original).

[4] Wright's remaining claims against Humphrey were dismissed without prejudice on January 14, 2019.

limited to determining whether the trial court abused its discretion. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. We may affirm a general default judgment on any theory supported by the evidence adduced at trial. The trial court's discretion is necessarily broad in this area because any determination of excusable neglect, surprise, or mistake must turn upon the unique factual background of each case. Moreover, no fixed rules or standards have been established because the circumstances of no two cases are alike.… Furthermore, reviewing the decision of the trial court, we will not reweigh the evidence or substitute our judgment for that of the trial court. Upon a motion for relief from a default judgment, the burden is on the movant to show sufficient grounds for relief under Indiana Trial Rule 60(B).

*Kmart Corp. v. Englebright*, 719 N.E.2d 1249, 1253 (Ind. Ct. App. 1999) (internal citations and quotation omitted).

[10]     The nature of Prime's interest in the underlying lawsuit is the crux of the issue before us on appeal. In challenging the trial court's default of its motion to set aside the default judgment against Riteway, Prime claims that its continuing interest in the issue of liability warranted setting aside the default judgment. For his part, Wright argues that Prime does not hold a legally cognizable interest in the underlying lawsuit. We agree with Wright.

[11]     Notably, any interest Prime has in the underlying lawsuit stems from choices made by Prime. After choosing to issue a liability policy to Riteway, Prime made the additional choice to issue the MCS-90 Endorsement to Riteway. As Prime acknowledged during oral argument, Prime was not required to do so.

[12]     It is undisputed that Prime successfully obtained a declaratory judgment indicating that it did not have a duty to defend Riteway under the liability policy and that its only remaining interest stems from the MCS-90 Endorsement. Prime has indicated that it plans to contest whether the MCS-90 Endorsement applies under the facts of this case, a determination that will have to be made in subsequent legal proceedings. Prime's continuing interest, therefore, is contingent as it is subject to a subsequent legal determination regarding applicability of the MCS-90 Endorsement.

[13]     We have previously considered whether a contingent interest was sufficient to warrant intervention by an insurance company into a lawsuit involving one of its insureds. In *Cincinnati Insurance Co. v. Young*, we noted that under Indiana law, intervention into a lawsuit is warranted if the intervening party demonstrates "(1) an interest in the subject of the action, (2) disposition of the action may as a practical matter impede the protection of that interest, and (3) representation of the interest by existing parties is inadequate." 852 N.E.2d 8, 13 (Ind. Ct. App. 2006), *trans. denied*.

[14]     After the trial court allowed Cincinnati Insurance Co. ("Cincinnati") to intervene in a lawsuit involving one of its insureds, we were called upon to determine whether Cincinnati, which had both contested coverage and sought to intervene, had a sufficient interest in the underlying lawsuit to warrant intervention. *Id.* at 13–17. Concluding that a contingent interest was not sufficient to warrant intervention, we noted that "when an insurer attempts to intervene in the action between its insured and the injured party but reserves the

right to deny coverage, the insurer's asserted interest is not cognizable but rather contingent upon the acceptance of coverage before it becomes colorable for the purposes of [intervention]." *Id.* at 15. Given that Cincinnati had both contested coverage and sought to intervene, we found that its interest in the lawsuit "was contingent and not direct." *Id.* We further noted that although Cincinnati assured us that it appealed "only" in its own name, it effectively sought "to relitigate [its insured's] liability." *Id.*

> Allowing Cincinnati to raise these issues while it is still contesting its coverage under the insurance policies would grant the insurer two bites at the proverbial apple in an attempt to escape liability; once in this appeal on issues resulting from the underlying trial and again during its pursuit of its declaratory judgment action disputing coverage.

*Id.* As such, we concluded that the trial court had abused its discretion in allowing Cincinnati to intervene. *Id.* at 17.

[15] We find our conclusion in *Young* to be instructive in this case. As we stated above, Prime's continuing interest is, at most, a contingent interest. Applying our conclusion from *Young* regarding contingent interests to the facts of this case, we conclude that Prime's contingent interest does not warrant reversing the default judgment that was entered against Riteway.

[16] Prime admits that it is seeking to relitigate Riteway's liability in an effort to limit a potential future financial obligation that it may have to Wright. Prime also admits that it has received a judicial determination that it has no duty to defend under its liability policy and has indicated that it plans to seek a similar

judicial determination that the MCS-90 Endorsement does not apply to the facts of this case. Prime cannot both deny its obligation to its insured and, at the same time, seek to litigate questions relating to liability and damages. To allow Prime to do so would effectively grant Prime a second bite at the apple in its attempt to escape a potential future financial obligation. The trial court did not abuse its discretion in denying Prime's motion to set aside the default judgment entered against Riteway.

[17] The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.